IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Dr. LORIA AWADALLAH

        PLAINTIFF,                       **CASE NO.**

v.

BIOMAT USA, INC.

        DEFENDANT.

## EMPLOYMENT DISCRIMINATION COMPLAINT

**NOW COMES,** PLAINTIFF, **Dr. Loria Awadallah,** and files this complaint to redress the discrimination she encountered while working for DEFENDANT, **BIOMAT USA, INC.** for her termination from employment due to her race, religion and/or national origin in violation of Title VII, 42 USC 1981, the Illinois Human Rights Act, for DEFENDANT failure to pay her wages and DEFEDNANT's failure to provide PLAINTIFF personnel file after she requested it pursuant to **820 ILCS 40 et seq.**

1. PLAINTIFF, Dr. Loria Awadallah, national origin is Palestinian. PLAINTIFF is Arab whose religion is Muslim. PLAINTIFF wears a hijab.

2. DEFENDANT, BIOMAT USA, Inc., does business throughout the USA and has several locations in Illinois. BIOMAT may be served through its registered agent.

3. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343 (civil rights). The court also has Supplemental jurisdiction over the State Claims as they come out of the same set of facts and questions of law.

4. Venue is also proper in this Court as the actions occurred in Illinois.

5. All conditions precedent have been performed prior to filing this complaint pursuant to the Illinois Human Rights Act and PLAINTIFF has opted out of the administrative process and was received the right to sue after April 1, 2023.

6. All required conditions precedent required under Title VII (42 U.S.C. §2000e et seq.) have been exhausted and/or performed by PLAINTIFF prior to the filing of this complaint. PLAINTIFF filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), within 300 days of the date of the of her termination from employment and that is complained of herein. PLAINTIFF received the Notice of Right to Sue via US Mail or about April 18, 2023. This suit is timely filed within the 90 days allowed from the receipt of this right to sue letter.

7. Pursuant to 42 U.S.C. 1981 PLAINTIFF belongs to a protected class for race as she is Muslim and/or Arab.

8. PLAINTIFF was an employee of DEFENDANT as defined by IHRA 775 ILCS 5/2-101 (A) and 42 USC § § 2000e(f).

9. DEFENDANT is an employer as defined by 42 USC § 2000e(b).

10. PLAINTIFF was an employee Defendant as defined by 42 USC § 2000e(f).

11. PLAINTIFF performed her job duties in an above satisfactory manner while she worked for DEFENDANT. PLAINTIFF received exceeded expectations evaluations, was promoted to a Center Manager, and received raises while working for DEFENDANT.

12. DEFENDANT promoted PLAINTIFF to be a manager at the Maywood BIOMAT Plasma Center. Under PLAINTIFF's supervision, the Maywood center for DEFENDANT won numerous awards for its performance. In May 2022, PLAINTIFF's center earned an award for being a top performing center in the Midwest Business Unit and was given a steak BBQ cookout for her entire center due to their/her excellent work.

13. Due to PLAINTIFF superior work record, PLAINTIFF was selected to travel for DEFENDANT to Egypt on July 2, 2022, to train and open centers for DEFENDANT.

14. DEFENDANT used PLAINTIFF's Maywood center to train other teams.

15. Marialena Sanchez, another employee, was brought to the Maywood center managed by PLAINTIFF to train Sanchez's staff.

16. Sanchez is married to Robert Sanchez, the former business unit president of region 6.1 for DEFENDANT and who worked for DEFENDANT during the times relevant to this Complaint. Due to her marriage to Robert Sanchez, Marialena Sanchez ("Sanchez") asserted influence to have PLAINTIFF treated inferior to other employees, closely scrutinized, suspended, and eventually fired. Sanchez had powers greater than a supervisor of PLAINTIFF towards PLAINTIFF's employment due to her husband being an officer or former officer for DEFENDANT' company.

17. Marialena Sanchez made Islamophobic statements to other employees of DEFENDANT and treated PLAINTIFF inferior compared to other employees. Sanchez would make statements about PLAINTIFF wearing a hijab to other employees. Sanchez referred to PLAINTIFF as a "hijab wearing manager."

18. Sanchez was openly hostile towards PLAINTIFF but would also treat PLAINTIFF as if she did not exist and was inferior to employees who were not of PLAINTIFF's race, national origin and./or religion. Sanchez would refuse to speak or acknowledge PLAINTIFF at times and treated the PLAINTIFF as if PLAINTIFF did not exist. Sanchez's actions greatly affected the PLAINTIFF's work atmosphere as well as the terms and conditions of PLAINTFIFF's employment.

19. Sandra Smiley is another center manager who worked for DEFENDANT at the same time PLAINTIFF worked for DEFENDANT. Smiley worked with PLAINTIFF and made Islamophobic slurs regarding PLAINTIFF.

20. Smiley also worked with Sanchez. While Smiley and Sanchez worked together, employees of DEFENDANT heard conversation which had slurs relating to Black and Arab individuals between the Smiley and Sanchez.

21. Sanchez on numerous occasions during the time she worked at the Maywood center that PLAINTIFF managed, stated to employees of DEFENDANT that Sanchez was going to get PLAINTIFF fired.

22. Sanchez stated to employees of DEFENDANT that she was married to Robert Sanchez and that she was untouchable for whatever she did, that she could either help the employees' career or get the employee fired.

23. Sanchez threatened employees who would not participate in her desire to get PLAINTIFF fired.

24. Sanchez closely monitored and scrutinized the work of PLAINTIFF and her employees more than usual so she could find reason to have DEFENDANT fire PLAINTIFF. Sanchez kept logs and notes relating to PLAINTIFF's center and manufactured false reports about PLAINTIFF's center.

25. In the June of 2022, Sanchez allegedly witnessed an employee at Maywood fail to refrigerate plasma units after 30 minutes which would be a violation of a standard operating procedure ("SOP"). Sanchez allowed the alleged plasma units to be shipped and used, did not notify anyone about the SOP at the time it was allegedly done and did not stop the alleged tainted plasma from being used.

26. Sanchez instigated an investigation for SOP violation of the plasma not being refrigerated at the Maywood center in the July 2022, after PLAINTIFF left for Egypt business trip July 2, 2022. Due to Sanchez's complaints, DEFENDANT looked at numerous amounts of video to see if any violations occurred at the Maywood location. DEFENDANT did an investigation into the alleged SOP violation and found minor infractions and found no reasons or fault to discipline PLAINTIFF. Sanchez did not like the outcome of the first investigation and had a second investigation done for the same incidents in August 2022, after PLAINTIFF returned from Egypt project. DEFENDANT again found only minor infractions and did not discipline the PLAINTIFF. Sanchez was dissatisfied with the second investigation outcome after Martin Kostner, (Vice President of the Midwest Business Unit) had visited her at Sanchez's Portage Park Plasma center to inform her the investigation was over, in which both Martin and Sanchez disruptively left the center together. Sanchez met with Kostner alone. Sanchez then instigated a third extra secret investigation of PLAINITFF's Maywood center in order to get PLAINTIFF

fired. The third investigation was not done in the normal course of DEFENDANT' business and PLAINTIFF's Directors and Regional Managers were not involved in the third investigation.

27. Sanchez was present at the center at the time of the alleged violations of the SOP, was a manager and failed to notify anyone relating to the alleged SOP infraction and allowed the plasma to be shipped. Sanchez was not disciplined by DEFENDANT for not reporting the SOP at the time it occurred, allowing the alleged plasma to be shipped even though she allegedly witnessed said SOP infraction.

28. Contrary to Respondent's policy, based upon Sanchez's involvement, DEFENDANT bypassed normal channels and had a third secret investigation of the SOP done against PLAINTIFF's center for the alleged same infractions. The investigation was done without Human Resources and PLAINTIFF's Directors and Regional managers being involved.

29. The bypass of all procedures instigated by Sanchez was done to have PLAINTIFF terminated.

30. PLAINTIFF made numerous complaints to her directors, regional managers, and DEFENDANT' human resource department about the discrimination and hostile work environment which Sanchez created for PLAINTIFF.

31. PLAINTIFF made reports to DEFENDANT' regional managers in May 2022, regional managers, and directors in July, and again in August 2022 including Human Resources, and again on September 2, 2022.

32. DEFENDANT intentionally failed to open a claim in its HR department against Sanchez and ignored its procedures relating to PLAINTIFF's complaint of hostile work environment.

33. DEFENDANT did not timely investigate PLAINTIFF's complaint relating to Sanchez's actions towards PLAINTIFF.

34. PLAINTIFF did not violate any policy of DEFENDANT' that would allow for PLAINTIFF's termination. DEFENDANT ignored its policies in relation to PLAINTIFF and treated PLAINTIFF differently than it treated other employees, who were not Muslim or of Arab/Palestinian descent and who were similarly situated to PLAINTIFF, when it fired her

35. DEFENDANT placed PLAINTIFF on suspension on September 2, 2022. PLAINTIFF was discharged on October 12, 2022, after 6 weeks paid suspension and no specific reason was given for her termination when DEFENDANT terminated PLAINITIFF's employment.

36. DEFENDANT have a policy to provide progressive discipline to employees. DEFENDANT violated its discipline policies when it suspended and fired the PLAINTIFF.

37. DEFENDANT relied upon the statements of Sanchez and Sanchez's actions to terminate PLAINTIFF.

38. But for the involvement of Sanchez, DEFENDANT would not have terminated PLAINTIFF.

39. PLAINTIFF was subject to different terms and conditions of employment due to her religion Muslim and/or her being of Arab descent and Palestinian.

40. During the time PLAINTIFF worked with Marialena Sanchez in May 2022 until she was fired on October 12, 2022, PLAINTIFF was subjected to a hostile work environment due to her race–Arab, Religion—Muslim, and or her National Origin Palestinian by Marialena Sanchez. Sanchez's harassment was done to undermine PLAINTIFF's ability to work and made PLAINTIFF feel inferior and discredited the PLAINTIFF. Sanchez avoided speaking to PLAINTIFF, treated PLAINTIFF terribly and refused to look PLAINTIFF in the face. Sanchez treated PLAINTIFF inferior compared to other employees. PLAINTIFF's staff and others noticed this and informed PLAINTIFF about the Islamophobic and terrible things Sanchez was stating about PLAINTIFF.

41. On June 30, 2022, at about 1:00 pm PLAINTIFF tried to speak with Sanchez about Sanchez's horrible treatment of PLAINTIFF. Sanchez refused to listen and then Sanchez treated PLAINTIFF even worse. Sanchez refused to cooperate with the PLAINTIFF, sabotaged PLAINTIFF's place location, attempted to poach PLAINTIFF's employees and refused to cooperate with the PLAINTIFF.

42. The harassment of Sanchez to PLAINTIFF was offensive and unwanted to the PLAINTIFF.

43. DEFENDANT's actions through Sanchez allowed the offensive conduct to create a hostile and intimidating work environment for PLAINTIFF and interfered with PLAINTIFF's ability to perform her job.

44. The statements of Sanchez are direct evidence of animus towards Arabs, Muslim and/or Palestinians. DEFENDANT used Sanchez's input in its decision to terminate PLAINTIFF.

45. DEFENDANT did not pay PLAINTIFF for her last pay period from October 2, 2022, through October 22, 2022. Said amount is due and owing.

46. When PLAINTIFF was fired by DEFENDANT on October 12, 2022, Human Resources had no formal record in its HR's system about the hostile work environment complaint filed by PLAINTIFF against Sanchez. When PLAINTIFF contacted DEFENDANT' Employee Relations Department per HR to find out about the termination reason on October 19, 2022, DEFENDANT had no record of a formal investigation into PLAINTIFF's hostile work environment complaint. PLAINTIFF asked for an appeal from Employee Relations on October 19, 2022, in which the appeal investigation was started and as of the filing of this Complaint, no reply/conclusion was given to the PLAINTIFF.

47. The actions of the DEFENDANT damaged the PLAINTIFF. PLAINTIFF lost wages and fringe benefits due to DEFENDANT' actions towards her. PLAINTIFF also suffered compensatory damages including loss of reputation, embarrassment and the loss of the job created financial hardship as well as emotional stress which included physical ailments such as insomnia, stomach pains and other medical issues.

48. The actions of DEFENDANT toward PLAINTIFF were malicious or was in reckless disregard to PLAINTIFF'S rights.

**COUNT 1 TITLE VII**

49. PLAINTIFF realleges paragraph 1- 48 as set forth herein.

50. PLAINTIFF being Muslim, Arab, and Palestinian are protected classes under 42 USC § 2000e et. seq.

51. 42 USC § 2000e-2(a)(1) makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

52. DEFENDANT terminated PLAINTIFF's employment because she was Muslim, Palestinian and/or Arab in violation of 42 USC § 2000e-2(a)(1).

53. DEFENDANT treated PLAINTIFF less favorably than similarly situated employees, such as Sanchez and/or Smiley and/or others, in violation of 42 USC § 2000e-2(a)(1) when it disciplined and/or fired PLAINTIFF.

54. PLAINTIFF's religion, National Origen, and Race, (Muslim, Arab and Palestinian) played a part in DEFENDANT' decision to terminate the PLAINTIFF.

## COUNT II VIOLATION OF 42 USC § 1981

55. PLAINTIFF incorporates her allegations of paragraphs 1-54 as set forth herein.

56. PLAINTIFF's being ARAB and/or MUSLIM is a race under 42 U.S.C. §1981.

57. DEFENDANT suspended and fired PLAINTIFF due to her race. DEFENDANT' actions including firing the PLAINTIFF violated 42 U.S.C. §1981 and PLAINTIFF was damaged by DEFENDANT' actions.

## COUNT III_ HOSTILE WORK ENVIRONMENT-TITLE VII

58. PLAINTIFF realleges paragraphs 1-57 into Count III as set forth herein.

59. Employees of DEFENDANT, including some of which had supervisory capacity over PLAINTIFF, intimidated PLAINTIFF, threatened PLAINTIFF, and made derogatory Islamophobic statements to PLAINTIFF due to PLAINTIFF's being Arab, Muslim, and Palestinian.

60. DEFENDANT actions violated 42 USCE § 2000e et seq by creating an abusive work environment due to PLAINTIFF's religion, national origin and/or Race.

61. The power DEFENDANT provided to Sanchez allowed Sanchez to be able to get PLAINTIFF fired and affected PLAINTIFF's employment like a supervisor. Sanchez due to her actions and the reliance of DEFENDANT on Sanchez's word should be treated as a supervisor for the PLAINTIFF.

62. The conduct was sufficiently severe or pervasive that a reasonable person in PLAINTIFF's position would find PLAINTIFF's work environment to be hostile or abusive.

63. At the time the conduct occurred, PLAINTIFF believed that the conduct made her work environment hostile and/or abusive.

64. The statements and actions by Sanchez were done on a regular basis and interfered with PLAINTIFF's ability to do her job and interfered with her ability to do work while working for DEFENDANT.

65. DEFENDANT knew or should have known about the conduct alleged in this Complaint that were done to PLAINTIFF. DEFENDANT did not take reasonable steps to correct the situation and/or prevent harassment from recurring.

66. In this case, the abuse PLAINTIFF endured due to actions of DEFENDANT, and DEFENDANT' employees was frequent and severe and lasted for several months until PLAINTIFF was suspended and fired. The statements and actions of Sanchez and other employees of DEFENDANT humiliated PLAINTIFF. The actions complained of herein unreasonably interfered with the PLAINTIFF's work.

67. The firing of PLAINTIFF was a tangible employment action.

## COUNT IV RETALIATION TITLE VII

68. PLAINTIFF realleges paragraph 1-67 into Count IV as set forth herein.

69. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), makes it unlawful employment practice for an employer to discriminate against any of his employees or to discriminate against any individual because he has opposed any practice made an unlawful employment practice.

70. PLAINTIFF opposed the unlawful employment practices of DEFENDANT and reported the actions of Sanchez to DEFENDANT on several occasions to management who supervised PLAINTIFF and Human Resources.

71. Sanchez told numerous employees while she worked at PLAINTIFF's Maywood center, that Sanchez had PLAINTIFF fired.

72. A short time after making her complaint to DEFENDANT, PLAINTIFF was Suspended and then terminated.

73. DEFENDANT terminated PLAINTIFF's employment in retaliation for PLAINTIFF asserting her rights under TITLE VII on October 12, 2022, in violation of 42 U.S.C. § 2000e-3(a).

## COUNT V VIOLATION IHRA

74. PLAINTIFF realleges paragraphs 1-73 into Count V as set forth herein.

75. 775 ILCS 5 et seq. makes it illegal to discriminate against someone due to their race, religion and/or national origin.

76. PLAINTIFF being Muslim, Arab and/or Palestinian are protected classes under the Illinois human rights act.

77. Sanchez and others who worked for DEFENDANT harassed PLAINTIFF and made derogatory Islamophobic statements about PLAINTIFF and mistreated the PLAINTIFF due to PLAINTIFF's being Muslim, Arab and /or Palestinian.

78. Pursuant to 775 LICS 5/2-102(A) it is unlawful for an employer to engage in harassment or discharge, discipline and create different privileges or conditions of employment on the basis of a person's Religion, Race or National Origin.

79. DEFENDANT' termination of PLAINTIFF's employment as well as the differences in terms and conditions of employment which PLAINTIFF was subjected to by DEFENDANT was done because of PLAINTIFF's Race, Religion and/or National Origin. Employer's actions were unlawful discrimination against PLAINTIFF in violation of 775 ILCS 5/1103 (Q).

## COUNT VI- HOSTILE WORK ENVIRONMENT IHRA.

80. PLAINTIFF realleges paragraphs 1-80 into Count VI as set forth herein.

81. Sanchez and others who worked for DEFENDANT intimidated, mistreated the PLAINTIFF, and made derogatory Islamophobic statements to her.

82. The IHRA at 775 ILCS 5/2-101(E-1) defines harassment as follows:

"Harassment" means any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, citizenship status, or work authorization status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

83. PLAINTIFF received unwelcome conduct on the basis of an individual's actual or perceived race, color, religion and/or national origin by DEFENDANT' employees including Sanchez due to PLAINTIFF's race, Religion and/or national origin.  The unwelcome conduct violated the Illinois Human Rights Act including 775 ILCS 5/2-102.

## COUNT VII RETALIATION IHRA

84. PLAINTIFF realleges paragraph 1-83 into Count VII as set forth herein.

85. The Illinois Human Rights Act makes it unlawful for an employer to fire an employee in retaliation for making a complaint of discrimination or asserting a right to protection under the IHRA.  775 ILCS 5/6-101(A) makes it is a violation of the IHRA to retaliate against a person who has opposed the which he or she reasonably believes and in good faith believes to be unlawful discrimination.

86. PLAINTIFF made a good faith report to DEFENDANT to oppose that what she believed was unlawful discrimination she was encountering due to her being Muslim, Arab and/or Palestinian.

87. A short time after PLAINTIFF made her complaint of hostile work environment to DEFENDANT, she was suspended and subsequently fired.

88. The termination of PLAINTIFF by DEFENDANT from employment on October 12, 2022, was in retaliation for PLAINTIFF making a good faith complaint to DEFENDANT to stop the unlawful

discrimination that she was dealing with in connection with PLAINTIFF's employment with DEFENDANT.

## COUNT VIII (820 ILCS 115/) Illinois Wage Payment and Collection Act

89. PLAINTIFF realleges paragraph 1- 88 as set forth herein.

90. PLAINTIFF was an employee of DEFENDANT.

91. DEFENDANT failed to pay PLAINTIFF her last paycheck.

92. DEFENDANT owe PLAINTIFF her check while on suspension from October 2, 2022, through October 12, 2022, as well as other wages.

93. PLAINTIFF has made demand upon DEFENDANT for pay but DEFENDANT has failed to make payment.

94. 820 ILCS 115/5 requires an employer to pay final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.

95. Pursuant to 820 ILCS 115/14, DEFENDANT owe PLAINTIFF 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. Additionally, DEFENDANT owe PLAINTIFF costs, and all reasonable attorney's fees.

## COUNT IX VIOLATIONS OF 820 ILCS 40

96. PLAINTIFF realleges paragraph 1- 96 as set forth herein.

97. **820 ILCS 40** states that every employer shall, upon an employee's request which the employer may require be in writing on a form supplied by the employer, permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge, or other disciplinary action. The inspection right encompasses personnel documents in the possession of a person, corporation, partnership, or other association having a contractual agreement with the employer to keep or supply a personnel record.

98. Pursuant to **820 ILCS 40**, the employer shall provide the employee with the inspection opportunity within seven working days after the employee makes the request or if the employer can reasonably show that such deadline cannot be met, the employer shall have an additional 7 days to comply.

99. Pursuant to 820 ILCS 40/4, when an employer fails to include Personnel record information but should have been as required by this Act, an employer shall not be used by an employer in a judicial or quasi-judicial proceeding.

100. PLAINTIFF requested her personnel file on at least two occasions. DEFENDANT initially ignored the requests. DEFENDANT finally provided PLAINTIFF with some documents but failed to provide documents intentionally to PLAINTIFF relating to her termination and discipline.

101. PLAINTIFF requests an order from this Honorable Court, pursuant to Illinois law, that DEFENDANT violated the ACT and be denied the ability to use documents which it did not provide to PLAINTIFF that were to be in personnel file.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests judgment against the DEFENDANT as follows:

1. Declaring that DEFENDANT's conduct has violated PLAINTIFF's rights as secured by the Title VII and/or 42 U.S.C. 1981.

2. Order DEFENDANT to institute and carry out policies, practices, and programs which provide equal employment opportunities to qualified individuals with disabilities, and which eradicate the effects of past and present unlawful employment practices.

3. Awarding compensatory damages on each and every cause of action, including but not limited to damages for mental distress and humiliation, embarrassment, degradation, emotional and physical distress, and other nonpecuniary losses as will fully compensate PLAINTIFF for the injuries caused by DEFENDANT's discriminatory conduct.

4. Awarding punitive damages for DEFENDANT's illegal conduct.

5. Make PLAINTIFF whole including back pay, front pay, and benefits and all economic damages which PLAINTIFF has sustained.

6. Awarding such other and additional relief as may be necessary to make PLAINTIFF whole on each and every cause of action.

7. An order that documents not provided by DEFENDANT pursuant to 820 ILCS 40 shall be excluded from DEFENDANT being able to use them in this case.

8. Awarding a reasonable attorney's fee and costs in prosecuting this action

9. Enjoining and permanently restraining the alleged violations of law on each and every cause of action.

10. Awarding such other equitable relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

/s/Steven D. Horak
STEVEN D. HORAK,
940 Knollwood Dr
Buffalo Grove IL 60089
 (847)877-3120
Steve@stevenhoraklaw.com
ATTORNEYS FOR PLAINTIFF

**JURY DEMAND**

**PLAINTIFF DEMANDS TRIAL BY A JURY.**

_____

Steven D Horak # 6207126
940 Knollwood Dr
Buffalo Grove IL 60089
847-877-3120
Steve@stevenhoraklaw.com
Attorney For Plaintiff